Curia, per

Evans, J
It is not controverted, but that the defendant *212 acted in pursuance of the ordinance of the town council, and the only question is, whether the council, by ordinance, could delegate to the defendant authority to seize the hog of the plaintiff, who was not a citizen of the town. I presume it will not be denied that the Legislature could pass a law requiring every man to keep his hogs within his own enclosures, and if he allowed them to stray at large, to authorize the seizure and sale of them. Previous to the Act of 1783,(a) incorporating the city of Charleston, we find many acts of the Legislature for the government of that city, similar to the ordinance under which the defendant sets up his justification. It would not be competent for the Legislature to delegate general powers of legislation to any other body than itself; yet, it has not been doubted, but that it may delegate to the corporate towns, a limited species of legislation, confined to their corporate limits, and in strict subordination to the constitution and general laws of the land.
The ordinance, in substance, prohibits all persons from suffering or permitting their hogs to run at large within the limits of the town, and requires the marshals to seize and impound all such hogs.
It further directs the marshal to advertise, after impounding, and if the owner appears and proves his property, it shall be delivered to him, on his paying two dollars as a fine ; and in the event that no owner appears to claim the property, or appearing, shall fail or refuse to pay the fine, then the hogs shall be *sold, and the excess above the fine shall be paid to the owner, if demanded within thirty days after the sale.
By the Act of 1805, (8 Stat. 235,) incorporating the town of Columbia, the town council are authorized “ to make such ordinances, rules and regulations, relative to the streets and markets of said town, as they may think proper and necessary ; and may establish such by-laws as may tend to preserve the quiet, peace, safety, and good order of the inhabitants thereof; and they may fix and impose fines and penalties for the violation thereof, which may be recovered in a summary way, by the intendant and wardens, or a majority of them.” Similar provisions, but not in the same words, are to be found in the charters of the other incorporated towns, all of which are to be found in the seventh and eighth volumes of the Statutes at Large. The powers thus granted to the town council are, I apprehend, sufficient authority to make any public regulations which, in their judgment, may be necessary to prevent nuisances, by restraining hogs and goats from running at large, the accumulation of filth, and the butchering of hogs or cattle within the town ; for the regulation of disorderly negroes, and the riding or driving of horses in the streets ; upon all which subjects it appears they have legislated.
Indeed, without some regulations on these subjects, the good order, quiet, peace, and safety of the inhabitants could not be preserved. So obviously are these subjects within the legislative power of the council, that it has not been contended the ordinance would not operate upon the hogs of a citizen of the town. But it is supposed that the power of the council is restricted to those who reside within the limits of the corporation, and as the plaintiff is a non-resident, his hogs are privileged to run at large, whilst the hogs of a townsman have no such privilege. Let *213 ns see if there be any thing in this objection. The power granted, is restricted to the limits of the town, but within those limits no distinction is made by the Act of Incorporation between citizens and non-residents, or their property ; and it is clear that unless they come within the controlling power of the town authorities, when found within its limits, the power would be of but little avail in the attainment of the objects for which it was granted. Nothing can be more dangerous to the safety of persons passing along the streets, than the running of horses, and yet if the law of *the town council, on that subject, be obligatory only on the residents of the town, this plaintiff, or any one resident beyond boundary street, might make a race path of the streets of Columbia. The laws passed by the council, for the government of slaves, would be of but little value, if the numerous negroes who reside in the vicinity could violate them with impunity. But the arguments deduced from expediency and inconvenience, do not stand unsupported by the authority of the common law. The case of Price vs. Bartrain, (Cowp. 269,) was an action to recover a penalty for slaughtering two oxen within the city of Exeter, contrary to a by-law made by the Mayor and Common Council, under a general power given them by charter. Lord Mansfield said, “ As to the objection that the defendant was a stranger, what my brother Glynn has said, is a complete answer to it; namely, that he is an inhabitant pro hoc vice, and consequently is bound by the same requisition as the other members of the corporation. Therefore, I am of opinion the by-law is good.” The other Judges concurred. In that case the defendant had notice of the by-law, but was not free of the corporation, and, therefore, not a member of it. The same principle is to be collected from the case of the Butchers' Company vs. Morey, (1 Bla. 370.) These cases clearly establish, that if a stranger violate a by-law of a corporation, within its limits, having knowledge of the by-law, he is as liable as if he resided within the corporate limits. But it is supposed a difference exists between such a case and the one under consideration. I am at a loss to conceive in what the difference consists. The evil to be remedied is as great in the one case as the other. If a non-resident is bound to the observance of a known by-law, as well as a resident, I do not perceive why the hogs of the one shall be exempt, and not the other.
It was said in the arguments that every man has a right to turn his hogs on any unenclosed grounds How far this may be true, it is not necessary now to discuss. No one will doubt that this right may be abridged by legislation, and that laws may be passed to limit or restrain it altogether. A law similar to the ordinance now in question, was passed by the Legislature, in relation to the City of Charleston, before the incorporation of that city; and if this liberty of hog range may be abridged by the Legislature, it may be abridged by the City Council of ^Charleston, or the Intendant and Wardens of Columbia, or any other body to whom the Legislature have delegated the authority. The only case like the present which has been decided in our Courts, of which I have any knowledge, is the case of McRa vs. Olain, among the unpublished decisions of this Court. In that case, the Council of Camden, by ordinance, declared, “that it shall not be lawful to permit hogs to run at large within the limits of the town of Camden, and it shall be the duty of the town marshal, and he is required, to kill and destroy every hog *214 which may be found running at large within the limits of the said town, and may apply the hogs so killed to his own usewith a proviso, that it shall not extend to such as are usually kept without the limits, and may happen to stray into the town. Under this ordinance, the defendant seized and sold the plaintiff’s hog, and for this the action was brought. The case in this Court turned upon the question, whether the ordinance was in pursuance of the power granted by the charter. By reference to the Act incorporating the town of Camden, (8 Stat. 220,) it appears that the only mode of enforcing the by-laws of the corporation, was by fine, and it was held that an ordinance authorizing the marshal to kill and appropriate the hog to his own use, was not in pursuance of an authority to enforce the by-laws of the corporation by fine. No such objection arises here. The Act of Incorporation of the town of Columbia gives the power to pass by-laws, and to fix and impose fines and penalties for the violation thereof. The ordinance under which the defendant in this case justifies, imposes a fine of two dollars, and directs the seizure, impounding and sale of the hog, to raise the fine; and it is the opinion of this Court, that the ordinance was a legal justification to the defendant for the seizure of the hog, and the motion is therefore granted.
See 6 Rich. 415, 558; 1 Rich. 390; 2 Sp. 761; 2 McM. 233. An.
The whole Court concurred.
See Supra, 49, and cases there cited in note. An.

 7 Stat. 97. An.